THOMAS M. MCINERNEY, CA Bar No. 162055
tmm@ogletree.com
JARED L. PALMER, CA Bar No. 287974
jared.palmer@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:     415.442.4810
Facsimile:     415.442.4870

Attorneys for Defendant
THE SPECTRANETICS CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHELLY LOUANGAMATH, on behalf of herself and all others similarly situated,<br><br>  Plaintiffs,<br><br>  vs.<br><br>PHILIPS NORTH AMERICA LLC, a Delaware limited liability company; ANGIOSCORE, INC., a Delaware corporation; THE SPECTRANETICS CORPORATION d.b.a. SPNC, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>  Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANT THE SPECTRANETICS CORPORATION**<br><br>[28 U.S.C. §§ 1332, 1441, 1446, & 1453 (Class Action Fairness Act)]<br><br>[*Filed concurrently with Civil Cover Sheet; Certification of Interested Entities or Persons; Corporate Disclosure Statement; and Declaration of Karen Hatcher in Support of Notice of Removal*]<br><br>Action Filed:   April 20, 2018<br>Trial Date:       Not Set |

**PLEASE TAKE NOTICE** that Defendant THE SPECTRANETICS CORPORATION ("Spectranetics") removes this action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453 (the Class Action Fairness Act ("CAFA")) because: (1) Plaintiff Shelly Louangamath ("Plaintiff") is a "citizen of a State different from any defendant," (2) "the number of members of all proposed plaintiff classes in the aggregate is" over 100, and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." All CAFA requirements are satisfied.

These facts were true when Plaintiff filed her Class Action Complaint ("Complaint") and remain true as of the date of filing this Notice of Removal. Removal jurisdiction is appropriate as detailed more fully below.

## I.   THE STATE COURT ACTION

1.   On April 20, 2018, Plaintiff filed her Complaint in the Superior Court of the State of California for the County of Alameda ("Action"), Case No. RG18901786, against defendants Spectranetics, Philips North America LLC, and Angioscore LLC (erroneously sued herein as Angioscore, Inc.) ("Angioscore") (collectively, "Defendants"). (The Complaint asserts claims for: (1) failure to provide paid rest periods; (2) failure to provide meal periods; (3) failure to pay for all hours worked at the correct rate of pay; (4) failure to indemnify; (5) failure to provide accurate written wage statements; and (6) unfair competition.

2.   On May 18, 2018, Plaintiff served Spectranetics with a copy of the Summons and Complaint, Civil Case Cover Sheet, Alternative Dispute Resolution ("ADR") Information Packet, Form Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days, Notice of Case Management Conference and Order, and Notice of Assignment of Judge for All Purposes. True and correct copies of all documents served on Spectranetics are attached hereto as **Exhibit A**.

3.   On May 29, 2018, Plaintiff filed Proofs of Service of the Summons and Complaint and other documents served on Spectranetics and Philips. True and correct copies of all documents Spectranetics believes to be filed in this case are attached as **Exhibit B**.

4. On June 1, 2018, Plaintiff filed a Class Action First Amended Complaint ("FAC"). The FAC asserts claims for: (1) failure to provide paid rest periods; (2) failure to provide meal periods; (3) failure to pay for all hours worked at the correct rate of pay; (4) failure to indemnify; (5) failure to provide accurate written wage statements; (6) unfair competition; and (7) civil penalties provided by California Labor Code section 2699, *et seq.*

5. On June 1, 2018, Plaintiff served Spectranetics with a copy of the FAC.

6. On June 15, 2018, Plaintiff agreed to dismiss Defendant Angioscore and Defendant Philips without prejudice. While Plaintiff properly served Defendant Philips with the Complaint and FAC on May 18, 2018 and June 1, 2018, respectively, Philips was not the Plaintiff's employer. Defendant Angioscore had not been properly served with the Complaint and Summons.

7. On June 15, 2018, Spectranetics timely filed its Answer to Plaintiff's FAC in Alameda County Superior Court. A true and correct copy of this document and the proof of service is attached hereto as **Exhibit C**.

## II.   REMOVAL IS TIMELY

8. Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), based on the service of the Complaint on May 18, 2018, Spectranetics' deadline to remove is June 18, 2018. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This Notice of Removal is timely.

## III.   REMOVAL IS PROPER UNDER CAFA

9. The Action is removable under CAFA given the allegations and claims in the Complaint. The Complaint asserts claims for: (1) failure to provide paid rest periods; (2) failure to provide meal periods; (3) failure to pay for all hours worked at the correct rate of pay; (4) failure to indemnify; (5) failure to provide accurate written wage statements; and (6) unfair competition.

10. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of

such actions under 28 U.S.C. § 1446.

11.     This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as a class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from one of the Defendants, the number of members in Plaintiff's proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

**A.     CAFA's Minimal Diversity of Citizenship Requirement Is Satisfied**

12.     CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. §§ 1332(d)(2), 1453(a), (b); *Rodgers v. Central Locating Service, Ltd.*, 412 F. Supp. 2d 1171, 1174-79 (W.D. Wa. 2006).

13.     Defendants are informed and believe that at all relevant times, Plaintiff was, at the time of the filing of the Action, and still is, a resident of the State of California. (Complaint, ¶ 7.) Members of the putative class, who are or were employed in California, are presumed to be primarily citizens of the State of California. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

14.     Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The Supreme Court established the proper test for determining the principal place of business of a corporation for purposes of diversity jurisdiction. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Court held that "'principal place of business' [as contained in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1184, 1192. The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters -- provided that the headquarters is the actual center of direction, control and coordination." *Id*. A company's "'principal place of business' refers to the corporation's "nerve center." *Id*. at 1192. The "nerve center" is normally where the corporation maintains its headquarters. *Id.; see also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026 (9th Cir. 2009) (stating that an unincorporated

association is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business," with the state of the principal place of business being where a substantial predominance of corporate operations occur or where the majority of the partnership's executive and administrative functions are performed).

15. At all relevant times, Defendant Spectranetics has been incorporated under the laws of Delaware with its principal place of business in Colorado (Declaration of Karen S. Hatcher ("Hatcher Decl."), ¶ 3.) At all relevant times, Spectranetics has not been organized or incorporated under the laws of California or had its principal place of business there. (Hatcher Decl., ¶ 3.) Spectranetics does business in a number of states and does not conduct the substantial predominance of its business in any single state. (Hatcher Decl., ¶ 3.) As such, Spectranetics' principal place of business is in Colorado Springs, Colorado, where its corporate headquarters are located and where its high-level corporate officers, who are responsible for the direction, control, and coordination of its activities, are located. (Hatcher Decl. ¶ 3.)

16. Based on the foregoing, minimal diversity is established because, at all relevant times, Plaintiff has been a citizen of California, and Spectranetics is a citizen of Colorado and Delaware. 28 U.S.C. § 1332(d)(2)(A).

**B.  CAFA's Class Size Requirement Is Satisfied**

17. Plaintiff's Complaint alleges a putative class comprised of "[a]ll individuals Defendants employed in California as non-exempt hourly employees, including but not limited to assemblers and comparable positions, at any time during the period beginning four years prior to the filing of this action and ending on the date that final judgment is entered in this action." (Complaint, ¶ 16.)

18. Spectranetics has employed approximately 113 non-exempt hourly employees in California since April 20, 2014. (Hatcher Decl.¶ 4.)

19. Plaintiff concedes "[t]he class members are so numerous that the individual joinder of each individual class member is impractical" and "the actual number exceeds the minimum required for numerosity under California law." (Complaint, ¶ 18.)

20. Thus, CAFA's size requirement is satisfied, and this is a class action pursuant to 28 U.S.C. § 1332(d).

**C.    CAFA's Requisite Amount In Controversy Is Satisfied**

21. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

22. Plaintiff has not alleged a specific amount in controversy in the Complaint. However, the failure of the operative complaint to specify the total amount of monetary relief sought by Plaintiff does not deprive this Court of jurisdiction. *White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W. Va. 1994) (observing that defendant may remove suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining . . . to place a specific dollar claim upon its claim."). In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

23. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo*

*Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

24. Plaintiff defines her claims for (1) failure to provide paid rest periods; (2) failure to provide meal periods; (3) failure to pay for all hours worked at the correct rate of pay; (4) failure to indemnify; (5) failure to provide accurate written wage statements; and (6) unfair competition as on behalf of "[a]ll individuals Defendants employed in California as non-exempt hourly employees, including but not limited to assemblers and comparable positions, at any time during the period beginning four years prior to the filing of this action and ending on the date that final judgment is entered in this action." (Complaint, ¶ 16.)

25. Here, Plaintiff seeks the recovery of meal and rest period penalties, unpaid wages, including overtime, wage statement penalties and attorneys' fees on behalf of herself and the putative class that satisfies the $5,000,000 threshold for CAFA removal. *See* 28 U.S.C. § 1332(d).[1]

### a. Relevant Data

26. Defendant Spectranetics has employed approximately 113 hourly non-exempt employees in California since April 20, 2014. (Hatcher Decl., ¶ 4.)

27. From April 20, 2014, to June 17, 2018, Spectranetics' hourly non-exempt employees in California worked at least 55,610 shifts of at least eight hours. (Hatcher Decl., ¶ 5.)

28. The putative class is paid every two weeks. (Hatcher Decl., ¶ 6.) For the purposes of Spectranetics' payroll administration, there are 26 pay periods in a year. (Hatcher Decl., ¶ 6.) From April 20, 2017, to June 18, 2018, the number of wage statements issued to current and former hourly non-exempt employees employed by Spectranetics in California is at least 1,766. (Hatcher Decl., ¶ 6.)

29. From April 2014, through April 2018, the average hourly rate for non-exempt hourly employees employed by Spectranetics in California is $27.78. (Hatcher Decl., ¶ 7.) Plaintiff earned $22.82 per hour as of June 8, 2018. (Hatcher Decl., ¶ 7.).

---

[1] In alleging the amount in controversy for CAFA removal, Spectranetics does not concede in any way that Plaintiff's allegations in the Complaint are accurate or meritorious, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor does Spectranetics concede that any or all putative class members are entitled to any recovery, or are appropriately included in the Action.

  b. **Rest Period Penalties**

30. Plaintiff alleges "Defendants failed to provide Plaintiff and class with all paid rest periods in compliance with the Wage Order.  Plaintiff and the class' supervisors ('the Supervisors') required Plaintiff and the class to doff and don their hairnets, long coat jackets, and booty shoes and wash their, hands (which required them to wait in line for long periods of time) during their 10-minute rest periods.  Further, the Supervisors required Plaintiff and the class to take their second 10-minute rest period off the clock and failed to provide them with second rest periods when Defendants held mandatory company meetings and events.  Defendants failed to pay Plaintiff and the class premium wages on days they failed to provide Plaintiff and the class one or more paid rest periods in compliance with California law." (Complaint, ¶ 30.)

31. Pursuant to Labor Code section 226.7 and IWC Wage Orders, "Plaintiff and the members of the class are entitled to premium wages for all workdays in which one or more paid rest periods were not provided to them." (Complaint, ¶¶ 33-34.)

32. Based on the relevant data, the potential rest period penalties in controversy for only Spectranetics' non-exempt hourly employees is at least **$1,544,845.80** (55,610 shifts of eight hours or more x $27.78 per hour).

  c. **Meal Period Penalties**

33. Plaintiff alleges "Defendants failed to provide all meal periods to Plaintiff and the class in compliance with California law.  The Supervisors often interrupted Plaintiffs and the class' meal periods for status updates and to discuss work-related matters.  The Supervisors also required Plaintiff and the class to take late meal periods.  Moreover, Defendants required Plaintiff and the class to work in excess of 10 hours (sometimes 12) in a workday without providing them with second meal periods.  Defendants failed to pay Plaintiff and the class premium wages on workdays they failed to provide Plaintiff and the class with a meal period in compliance with California law.  To avoid paying premium wages, Defendants often instructed Plaintiff and the class to clock out and return to work as if timely meal periods took place when they did not." (Complaint, ¶ 42.)

/ / /

/ / /

34. Pursuant to California Labor Code section 226.7, "Plaintiff and the members of the class are entitled to premium wages for workdays in which one or more meal periods were not provided to them." (Complaint, ¶ 46.)

35. Based on the relevant data, the potential rest period penalties in controversy for only Spectranetics' non-exempt hourly employees is at least **$1,544,845.80** (55,610 shifts of eight hours or more x $27.78 per hour).

### d. **Failure to Pay Overtime Wages**

36. Pursuant to Labor Code sections 510, 1194, 1197, and 1198 and IWC Wage Orders, Plaintiff alleges Defendants are required to compensate putative class members at a rate of one and one-half times their rate of pay for all hours worked in excess of eight hours per day, forty hours per week, and for the first eight hours on the seventh workday, and double time for all hours worked in excess of twelve hours in any workday and for all hours worked in excess of eight hours on the seventh consecutive day in any workweek. (Complaint, ¶¶ 47-54.)

37. **Overtime Wages.** According to Plaintiff's own allegations "Defendants avoided paying Plaintiff and the class overtime wages by modifying their time records to falsely state that they only worked up to eight hours per day even on days they actually worked in excess of eight hours. Moreover, Defendants required Plaintiff and the class to spend approximately six hours per month on the computer training, taking mandatory company surveys, and reading and responding to internal emails. The Supervisors specifically instructed Plaintiff and the class to complete such tasks off the clock. Further, the Supervisors often interrupted Plaintiff's and the class' meal periods for status updates and to discuss work-related matters without compensating them for such on-duty meal periods." (Complaint, ¶ 55.)

38. Plaintiff alleges putative class members are entitled to be compensated at an average rate of approximately $41.04 per hour (one and one-half the average regular rate of $27.36) for shifts above 8 hours but less than 12. Assuming Plaintiff and the putative class members are owed 2 hours of overtime a week, they would be entitled to recover at least the following total approximate amount of overtime compensation: **$1,033,582.68** = (12,402 weeks worked x $83.34

1  (2 hours of overtime).  The amount of alleged overtime compensation owed is actually larger based
2  on the Complaint.  This calculation is a conservative estimate.

3     **e.**  **Failure to Furnish Accurate Itemized Statements**

4    39.  Plaintiff alleges that Spectranetics failed to provide accurate wage statements in
5  accordance with Labor Code section 226(a).  Specifically, "Defendants did not list such minimum,
6  overtime, and premium wages due on Plaintiff's and the class' wage statements.  As a result,
7  Defendants have failed to properly itemize Plaintiff and the class' gross and net wages earned, total
8  hours worked, hourly rate of pay, and corresponding number of hours worked at each hourly rate."
9  (Complaint, ¶ 73.)

10    40.  Pursuant to Labor Code section 226(e), Plaintiff and members of the putative class
11  are entitled to recover fifty dollars ($50) for the initial pay period within the applicable limitations
12  period in which a violation of Labor Code section 226 occurred and one hundred dollars for each
13  violation of Labor Code section 226 in a subsequent pay period, not to exceed an aggregate penalty
14  of four thousand dollars ($4,000) per employee.  (Complaint, ¶ 76.).  The statute of limitations for a
15  claim for statutory penalties under section 226 is one year.  *See* Cal. Code Civ. Proc. § 340(a).
16  Putative class members are paid every two weeks.  (Hatcher Decl. ¶ 6.)  Spectranetics issued at
17  least 1,766 wage statements to putative class members from April 20, 2017 through June 18, 2018.
18  (Hatcher Decl. ¶ 6.)  Thus, according to Plaintiff's allegation that Defendants failed to provide
19  accurate and timely wage statements, the putative class is entitled to recover at least the following:
20  ([1] initial wage statements x $50] + [1,701 subsequent wage statements x $100]) = **$173,350**.

21     **f.**  **Attorneys' Fees**

22    41.  Plaintiff seeks attorneys' fees on behalf of the putative class.  (Complaint, ¶¶ 58, 66,
23  70, 76, 82; Prayer for Relief ¶ 83 K; *see also*, FAC, ¶ 90.)  Spectranetics denies that Plaintiff is
24  entitled to recover any attorneys' fees; however, attorneys' fees are properly included in the
25  amount in controversy.  *See, e.g.*, *Lowdermilk v. US Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th
26  Cir. 2007) (holding that statutorily-mandated attorneys' fees are properly included in the amount in
27  controversy for CAFA jurisdiction purposes).
28  / / /

42. In class action litigation, courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g.*, *Hanlon v. Center for Auto Safety*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%). Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy. *See, e.g.*, *Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendants "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, Case No.: 11-CV-5500 YGR, 2012 U.S. Dist. LEXIS 27215, at *20-21 (N.D. Cal. March 1, 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'"). Twenty-five percent of the total potential award for just the limited claims outlined above is **$1,074,156.07**. A potential fee award of thirty-three percent for the limited claims outlined above would raise this number to **$1,417,886.01**. This number would, of course, be much larger if all claims Plaintiff is pursuing were included in the potential recovery.

g. **Summary of Amount in Controversy**

43. As detailed above, the amount in controversy for only some of Plaintiff's class claims totals at least **$5,370,780.35 (or $1,544,845.80** + **$1,544,845.80** + **$1,033,582.68** + **$173,350.00 + $1,074,156.07**), far exceeding the jurisdictional minimum under 28 U.S.C. § 1332(d).

44. The Complaint satisfies the requisite amount of controversy for removal under CAFA *without* taking into account: (1) Plaintiff's claim for failure to indemnify pursuant to Labor Code sections 1198 and 2802 and section 9(B) of the IWC Wage Orders; (2) Plaintiff's claim for unfair competition in violation of Business and Professions Code section 17200, *et seq.*; and (3)

1  remunerations for improper calculation of the overtime rate.  Spectranetics has not inflated the
2  CAFA amount in controversy.  If necessary, Spectranetics could and would supplement this Notice
3  of Removal to include estimates of the additional amounts in controversy based on the other
4  allegations contained in the Complaint.

### IV.   VENUE IS PROPER

45.    The Superior Court of the State of California for the County of Alameda is located within the territory of the United States District Court for the Northern District of California.  28 U.S.C. § 84(a).  Venue is proper in this Court because it is the district and division embracing the place where the Action was pending before removal.  28 U.S.C. § 1441(a).

### V.   SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446

46.    As discussed above, Plaintiff served Spectranetics with a copy of the Summons and Complaint, Civil Case Cover Sheet, ADR Information Packet, Form Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days, Notice of Case Management Conference and Order, Notice of Assignment of Judge for All Purposes, and FAC.  A true and correct copy of these documents, and Spectranetics Answer to Plaintiff's FAC, along with all documents Spectranetics believes to be filed in the Action are attached as **Exhibits A-C**.

47.    In accordance with 28 U.S.C. § 1446(b), this Notice of Removal was filed within 30 days after the effective date of service on Spectranetics on May 18, 2018.

48.    As required by 28 U.S.C. §1446(d), Spectranetics will promptly file a Notice to Adverse Parties of Removal of Action to the United States District Court in Superior Court of the State of California for the County of Alameda.

49.    A copy of the original Notice of Removal will be filed with the Superior Court of the State of California for the County of Alameda.

/ / /
/ / /
/ / /
/ / /
/ / /

## VI. CONCLUSION

50. Because jurisdiction is proper under 28 U.S.C. §§ 1332 and 1453, Spectranetics respectfully requests that this Court exercise its removal jurisdiction over this action.

51. If this Court has a question regarding the propriety of this Notice of Removal, Spectranetics requests it issue an Order to Show Cause so it may have an opportunity to more fully brief the Court on the basis for this removal.

WHEREFORE, Defendant The Spectranetics Corporation removes the above-entitled action to United States District Court for the Northern District of California.

DATED: June 18, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Jared L. Palmer*
THOMAS M. MCINERNEY
JARED L. PALMER

Attorneys for Defendant
THE SPECTRANETICS CORPORATION

34494664.2