UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY LOUANGAMATH,<br><br>Plaintiff,<br><br>v.<br><br>THE SPECTRANETICS CORPORATION,<br><br>Defendant. | Case No. 18-cv-03634-JST<br><br>**ORDER DENYING SECOND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 54 |

Before the Court is Plaintiff's unopposed second motion for preliminary approval of class action settlement. ECF No. 54. Although Plaintiff has remedied some of the defects identified in the Court's prior order denying approval, ECF No. 49, others remain. Accordingly, the Court will deny the motion without prejudice.

## I.  BACKGROUND

In this putative class action, Plaintiff Shelly Louangamath brings wage and hour claims against Defendant The Spectranetics Corporation, a medical device manufacturer headquartered in Colorado and incorporated in Delaware. ECF No. 55 at 4; *see also* First Amended Complaint[1] ("FAC") ¶ 10. Claims are brought on behalf of all non-exempt hourly employees who worked at Defendant's California facilities at any time between April 20, 2014 and the date that final judgment is entered in this action. FAC ¶ 16. Plaintiff alleges that Defendant failed to provide legally compliant meal and rest periods, compensate employees for all hours worked at the correct rate of pay, reimburse employees for expenses, and provide accurate written wage statements.

---

[1] Plaintiff's First Amended Complaint is included as an exhibit to Mr. Spivak's Declaration, ECF No. 55, and can be found at ECF pages 120-140. The same document is attached to the Notice of Removal, ECF No. 1, at ECF No. 1-1, ECF pages 35-55. In the future, the parties are instructed to file exhibits as separate attachments to improve the docket's clarity and readability.

*Id.* ¶¶ 79-80. A description of the parties, claims, and procedural history of this case can be found in the Court's July 27, 2020 order denying preliminary approval of the initial settlement agreement. ECF No. 49.

Plaintiff filed her original motion for preliminary approval of class action settlement on March 2, 2020. ECF No. 46. The Court denied the motion based on a number of deficiencies and omissions in the motion and proposed settlement. ECF No. 49. In its order, the Court detailed the terms of the proposed settlement agreement, *id.* at 2-5, which largely the same, except as discussed below.[2]

In its prior order, the Court identified several deficiencies that prevented it from granting preliminary approval of the settlement. First, the motion provided insufficient information for the Court to determine whether the settlement was a reasonable compromise of the class's claims. *Id.* at 9. Second, the proposed notice and notice plan required several corrections. *Id.* at 9-11. Third, the motion failed to address several material points, including: (1) whether a Class Action Fairness Act ("CAFA") notice was required and had been given; (2) information about Plaintiff's counsel's prior class action settlements required by the Northern District Procedural Guidance for Class Action Settlements; and (3) information about counsel's selection of, and prior engagements with, the settlement administrator. *Id.* at 15. The Court also identified concerns that might prevent final approval, including a lack of information regarding proposed class counsel Walter Haines, *id.* at 8; the lack of support for an attorney's fees award of 33% of the common fund, which exceeds the Ninth Circuit's benchmark of 25%, *id.* at 12-13; and the lack of support for an incentive award of $15,000, which exceeds the presumptively reasonable award of $5,000, *id.* at 13-15. The Court granted leave to submit a revised motion. *Id.* at 16.

On September 16, 2020, Plaintiff filed this second motion for preliminary approval of class action settlement. ECF No. 54. Defendant does not oppose the motion. ECF No. 57.

---

[2] The First Amended Joint Stipulation of Class Action and PAGA Settlement and Release of Claims is included as an exhibit to Mr. Spivak's Declaration, ECF No. 55, and can be found at pages 31-68.

## II. DISCUSSION

Plaintiff's second motion addresses some of the deficiencies identified by the Court in its prior order. The revised settlement now states that a CAFA notice will be provided to the United States Attorney General and the Attorneys General of California and any state where a Class Member resides within 10 days of the motion's filing. ECF No. 55 at 46 (III.J). Plaintiff has also submitted a declaration of service of the CAFA Notice. ECF No. 59. Plaintiff's motion also includes new information regarding the settlement administrator selection process, ECF No. 55 at 28-29, Plaintiff's counsel's engagement with the settlement administrator over the past two years, *id.* at 247-48, and examples of Plaintiff's counsel's previous class action settlements with the information required by the Northern District's Procedural Guidance for Class Action Settlements, *id.* at 244-245. Remaining defects, however, still prevent the Court from granting preliminary approval.

### A. Strength of Plaintiff's Claims

In its prior order, the Court instructed Plaintiff to explain the basis for the estimated maximum value of Plaintiff's claims as stated in the motion. ECF No. 49 at 9. The Court explained that even though Plaintiff's counsel had provided estimates of what he believed the class could potentially recover at trial, counsel had not explained how those estimates were calculated. *Id.* The Court suggested that Plaintiff might "show or estimate how many employees were allegedly shortchanged, calculate and explain to the Court the amount by which typical employees were allegedly shortchanged on an hourly or daily basis, and show or estimate the number of hours or days the employees were allegedly shortchanged." *Id.* (quoting *Eddings v. DS Servs. of Am., Inc.*, No. 15-cv-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016)).

The present motion provides additional detail about Plaintiff's calculations, *see* ECF No. 54-1 at 25-26, but still contains information gaps which interfere with the Court's ability to fully assess the settlement. Specifically, the second motion now provides equations to explain the calculation behind the asserted values for each claim. *Id.* However, Plaintiff does not explain the source of many of the figures or, if they are based on assumptions, why those assumptions are reasonable. Following are some examples.

3

1          First, Plaintiff estimates the potential recovery for off-the-clock work at $291,000. *Id.* at
2   25. Plaintiff's counsel reached this value by multiplying the total number of workdays (16,924 at
3   Fremont North and 8,464 at Fremont South) x unpaid hours per workday (0.5) x overtime rates
4   ($39.29 for Fremont North and $34.77 for Fremont South). *Id.* Plaintiff's counsel used an
5   identical equation with identical figures to value the unpaid wages based on meal period auto-
6   deductions, but somehow reached a different total value of $313,000. *Id.* If the inputs are the
7   same, then both estimates cannot be correct, and it not clear that either is. More importantly,
8   Plaintiff does not explain the basis for using (1) 0.5 hours as the multiplier for off-the-clock work
9   or meal period auto-deductions or (2) using 16,924 / 8,464 workdays. If those figures are taken
10  from Defendant's records, Plaintiff should say so and identify the records in question. If they
11  come from another source, Plaintiff should identify it. Plaintiff's remaining unpaid wage
12  calculation, for wages due based on time shaving, estimates a potential recovery of $53,000 based
13  on a calculation of putative class members (50) x average hours of employee time shaved (27.08)
14  x Fremont North overtime wages ($39.29). *Id.* Again, Plaintiff must explain the source of these
15  figures.
16         Second, Plaintiff estimates the potential recovery of the unpaid rest period claim at
17  $639,000. *Id.* Plaintiff's counsel reached this value by multiplying the total number of workdays
18  (same as above) by a given hourly rate ($26.19 for Fremont North and $23.18 at Fremont South)
19  assuming a 100% violation rate. *Id.* This equation effectively assumes a 1-hour rest period
20  violation for each workday, but provides no basis for that assumption. Likewise, Plaintiff
21  estimates the potential recovery of the unpaid meal period claim at $588,000, with a calculation
22  that multiplies the total number of workdays (same) x an hourly rate (same) at a 93% violate rate.
23  *Id.* Plaintiff's counsel should provide the basis for these violation rates.
24         Third, Plaintiff estimates that the potential recovery from the waiting time claim penalties
25  amounts to $149,000. *Id.* at 26. Plaintiff's counsel reached this value by multiplying the total
26  number of affected former employees (14 at Fremont North and 7 at Fremont South) x the number
27  of waiting time days (30) x estimated daily wages ($249.45 for Fremont North and $196.22 for
28  Fremont South). *Id.* Plaintiff estimates the potential recovery for statutory pay stub violation

4

1   penalties to total $167,000, calculated by multiplying the number of paychecks issued (1,133 for
2   Fremont North and 567 for Fremont South) x $50 for first violations and $100 for subsequent
3   violations. *Id.* As above, the Court needs information on how the figures (other than those
4   directed by statute) came to be used in these equations.

5         Finally, Plaintiff recognizes that the maximum civil penalties under PAGA can be
6   dependent upon various factors, but nonetheless estimates a total based on the above violations as
7   amounting to $623,000 for Fremont North and $812,000 (presumably) for Fremont South. *Id.*
8   Plaintiff should explain why the estimated value of Fremont South PAGA violations is greater
9   than PAGA violations for Fremont North, despite fewer paychecks having been issued and
10  otherwise lower claim values as presented in the above equations.

11        In sum, Plaintiff states that the above calculations account for a total estimated value of
12  $3.8 million for the alleged Labor Code violations. *Id.* The proposed settlement, meanwhile,
13  totals $350,000. *Id.* at 13. Plaintiff explains that a 90% discount from the recoverable maximum
14  is warranted based on "the difficulties of proof, the Defendant's defense, the likelihood of
15  prevailing, and other attendant risks," which Plaintiff describes in detail. *Id.* at 26-27. Plaintiff
16  also cites four cases to demonstrate that "[a] settlement for 9.2% of the potential recovery is a
17  reasonable proportion." *Id.* at 27; *see also id.* at 27 n.5. However, to truly understand the discount
18  of the class recovery, the recoverable maximum should be compared to what the *class* will recover
19  from the settlement. Under the current proposal, class members will only collect $178,833.33 –
20  roughly half of the total settlement amount – after deducting the maximum proposed attorney's
21  fees and costs, Class Representative incentive award, PAGA payment, and settlement
22  administrator fee. *See id.* at 14; *Morrison v. Am. Nat'l Red Cross*, No. 19-cv-02855-HSG, 2021
23  WL 75743, at *5 (N.D. Cal. Jan. 8, 2021) (calculating average recovery net of administration
24  costs, incentive award, and attorney's fees); *Villafan v. Broadspectrum Downstream Servs., Inc.*,
25  No. 18-cv-06741-LB, 2020 WL 6822908, at *2 (N.D. Cal. Nov. 20, 2020) (same); *Avina v.*
26  *Marriott Vacations Worldwide Corp.*, No. SACV 18-685 JVS, 2019 WL 8163642, at *2 (C.D.
27  Cal. Oct. 25, 2019) (same); *Bey v. Mosaic Sales Sols. US Operating Co., LLC*, No. 16-6024 FMO,
28  2019 WL 7940584, at *10 (C.D. Cal. June 20, 2019) (same). In other words, the settlement of

United States District Court
Northern District of California

class member claims amounts to only 4.7% of the potential value of those claims based on Plaintiff's counsel's figures. None of Plaintiff's cited cases suggest that a settlement representing 4.7% of what the class could get at trial is reasonable. *See id.* at 27 n.5. In any renewed motion, Plaintiff should provide authority that supports a discount of that magnitude.

### B. Notice Plan

In its prior order, the Court also noted several defects with the originally proposed notice plan: (1) the plan included an insufficient response period for class members to opt out, object, or dispute inaccurate information; (2) class members were required to submit too much personal information to request exclusion from the settlement or to submit an objection; (3) the notice did not provide complete instructions on what information class members are required to submit to object to the settlement; (4) the plan did not specify by how many days the objection period would be extended for class members who received their notice late; (5) the notice and plan did not indicate whether or when class members could object to the proposed award of attorney's fees; and (6) the notice gave the incorrect address for the Court. ECF No. 49 at 9-11. Plaintiff has cured many of these issues, but some errors remain.

The revised settlement partially cures the first defect. The revised notice plan extends the deadline for class members to opt-out or object to 60 days following the issuance of the notice. ECF No. 55 at 37 (¶ I.GG) (defining "Response Deadline" as 60 days after the mailing of notice and the last day to request an exclusion or to notice an objection). The revised notice itself makes this deadline clear for class members wishing to opt out, but not for those wishing to object. *See id.* at 75-76. Any renewed motion should correct the notice to make clear the deadline to object. Additionally, although the revised settlement's notice plan provides a process for class members to dispute their individual settlements calculations, *id.* at 49, the notice itself does not instruct class members how to initiate a dispute or the deadline to do so, *see id.* at 70-77. The notice should be amended to include this information. Again, the Court emphasizes that at least 60 days is likely necessary to ensure class members can "properly respond to the notice." *See Thomas v. Magnachip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 3879193, at *6 (N.D. Cal. July 18, 2016).

Plaintiff has only partially remedied the fifth defect. The revised settlement and notice now include information about how and when class members may object to attorney's fees. *See* ECF No. 55 at 56 (¶ III.M.4(a)); *id.* at 76. The revision provides, however, that the Motion for Attorney's Fees will be filed and made available to class members no later than 30 days prior to the Response Deadline. *Id.* This is not enough time for class members to evaluate the attorney's fees motion. *See* Northern District Guidance § 9 ("The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs.").

The remaining defects from the notice have been cured. The revised settlement's notice and notice plan now only request permissible information from class members wishing to object or opt-out, and properly instruct those class members wishing to object how to do so. *See* ECF No. 55 at 50-52 (¶¶ III.L.7(a), III.L.8(b)); *id.* at 75-76. The parties have also clarified in the notice and notice plan that the objection period will be extended by 15 days for class members who receive late notice. *See id.* at 49 (¶ III.L.4). The Court's address is now correct. *Id.* at 74, 76.

### C. Release of Additional Claims

Finally, although the motion makes no reference to it, the Court observes in the revised settlement that the parties seek to include the release of an additional claim. *See id.* at 42, 186. This is impermissible for several reasons.

First, under the revised settlement the named Plaintiff and Class Representative releases any claim she might have under the Age Discrimination in Employment Act ("ADEA"). *Id.* This claim was never presented in the complaint, and courts generally disfavor settlement release provisions that go "beyond the scope of the present litigation." *Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 4283420, at *5 (N.D. Cal. Sept. 7, 2018) (citation omitted).

Second, as currently written, the named Plaintiff purports to release any potential ADEA claim in exchange for the compensation of a service award. *See* ECF No. 55 at 42 ("Plaintiff, in the event she receives a service award, agrees that this Agreement constitutes a knowing and voluntary waiver of any and all rights or claims that exist or that Plaintiff may claim to have under the ADEA . . . ."). This is not a proper basis for a service award, which comes from common fund

7

monies that belong to the entire class.[3]  A service award is not intended to serve as consideration for the release of additional claims, but rather to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Third, by attempting to settle her own individual claim in exchange for an incentive award, Plaintiff creates a potential conflict between herself and the putative class. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (identifying as a factor for consideration of preliminary approval whether the proposed settlement "does not improperly grant preferential treatment to class representatives or segments of the class").  The Court will not approve a settlement that bestows a service award in exchange for a release.  The Court also notes again that, absent compelling circumstances, it is unlikely to look favorably on an award greater than $5,000.  *See Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 WL 4030558, at *9 (N.D. Cal. Aug. 23, 2018).

## CONCLUSION

For the foregoing reasons, the Court denies the second motion for preliminary settlement approval without prejudice.  The Court continues to defer its ruling on preliminary class certification until the settlement itself merits preliminary approval.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] There is no legal bar to Plaintiff settling her individual claims for a fair and reasonable amount, *Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2019 WL 2029061, at *4 (N.D. Cal. May 8, 2019), but Defendant must pay separate consideration for such a release and not use common fund monies that would otherwise belong to the class.

1    The Court sets a further case management conference on July 27, 2021 at 2:00 p.m.  An
2 updated joint case management statement is due on July 20, 2021.  The Court will vacate the case
3 management conference if an amended motion to approve class settlement is filed by July 16,
4 2021.

**IT IS SO ORDERED.**

Dated:  May 19, 2021



JON S. TIGAR
United States District Judge